# Illinois Official Reports

## Appellate Court

---

### *In re Commitment of Williams*, 2020 IL App (3d) 180588

---

| | |
|---|---|
| Appellate Court Caption | *In re* COMMITMENT OF LORNE E. WILLIAMS (The People of the State of Illinois, Petitioner-Appellee, v. Lorne E. Williams, Respondent-Appellant). |
| District & No. | Third District<br>No. 3-18-0588 |
| Filed | April 17, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 16-MR-202; the Hon. Michael D. Risinger, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Peter J. Lynch, of Hasselberg, Rock, Bell & Kuppler, LLP, of Peoria, for appellant.<br><br>Kwame Raoul, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Michael M. Glick and Evan B. Elsner, Assistant Attorneys General, of counsel), for the People. |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Presiding Justice Lytton concurred in the judgment and opinion.
Justice McDade dissented, with opinion.

## OPINION

¶ 1        A jury found the respondent, Lorne E. Williams, to be a sexually violent person. The trial court held the dispositional hearing immediately after the trial. The court heard arguments from the parties and ordered respondent committed to Rushville Correctional Center. Respondent argues that the court erred when it held the dispositional hearing immediately after the trial. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3        In 2006, respondent pled guilty to predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2004)). The court sentenced him to 12 years in prison. In 2016, the State filed a petition seeking respondent's commitment as a sexually violent person.

¶ 4        The trial court held a jury trial on the petition in June 2018. The State called two expert witnesses at trial, psychologists Dr. Mark Kuzia and Dr. Steven Gaskell. Dr. Kuzia testified, *inter alia*, that he diagnosed respondent with (1) pedophilic disorder, sexually attracted to males, nonexclusive type and (2) cannabis use disorder in a controlled environment. He also opined that respondent was a substantial risk to reoffend. Dr. Gaskell testified, *inter alia*, that he diagnosed respondent with (1) pedophilic disorder, sexually attracted to males, nonexclusive type and (2) antisocial personality disorder. He also opined that respondent was substantially probable to reoffend.

¶ 5        Respondent's criminal history included a conviction for predatory criminal sexual assault of a child for performing oral sex on a nine-year-old boy while respondent babysat for the victim. The crime occurred when respondent was 38 years old. Additionally, Dr. Gaskell testified that respondent admitted to him that respondent had also performed anal sex on the nine-year-old victim of the predatory criminal sexual assault. Respondent admitted to Dr. Kuzia that he had offended against the nine-year-old victim on three occasions. Respondent believed that the nine-year-old victim had behaved in a sexually provocative manner by running around without clothes on either before or after a shower. Respondent also had a conviction for possession of child pornography after a search of his room turned up 29 pictures of underage boys exposed and performing acts of sodomy, 40 pairs of young boys' underwear, stolen belongings from young boys, and literature from the North American Man Boy Love Association. The State had also charged respondent with indecent solicitation of a child for sending a note soliciting sex to a 12-year-old boy. Respondent's other criminal history included (1) 1991 convictions for attempted murder, aggravated battery, and armed violence; (2) 1985 convictions for aggravated battery and residential burglary; (3) a 1998 conviction for failure to register as a sex offender; and (4) 2001 convictions for possession of a controlled substance and failure to register as a sex offender. While incarcerated, respondent accumulated about 70 disciplinary infractions, including sexual misconduct infractions while incarcerated and sexual misconduct violations for engaging in oral sex with other inmates. A 2003 treatment note

revealed that respondent had been accused of grooming younger inmates in a peer education group.

¶ 6    At the close of the trial, the jury found respondent to be a sexually violent person.

¶ 7    After the jury returned its verdict, the court and counsel discussed what to do about the dispositional hearing. The State informed the court that it could hold the hearing immediately if the court believed it had sufficient information to make the dispositional determination; if not, it could order a predispositional evaluation and appoint experts. Counsel for respondent stated, "I would prefer to go the second route and have a dispositional hearing and then have an expert appointed to testify for—well, on [respondent's] behalf with regards to alternatives to being housed at Rushville."

¶ 8    In response, the court stated, "I'm going to convene the hearing right now, and so the Court is informed from having just now listened to all the evidence, but—and I recognize I have the right to request a dispositional report, but I don't think I need it." The court then requested argument from the parties. The State requested "commitment for institutional care in a secure facility in order for the Respondent to continue with treatment and to make sure that he uses the treatment foundations that he learns in order to prevent and lower his risk of reoffending." Counsel for respondent requested conditional release, citing a difference in opinion between the experts on respondent's risk of recidivism as reflected by his actuarial-instrument results. One expert stated that respondent's Static-99R score placed him as a moderate to high risk to reoffend, while the other stated respondent's Static-99R and Static-2002R scores placed him in the highest risk category.

¶ 9    After arguments, the court ordered respondent committed to Rushville Correctional Center.

¶ 10                                    II. ANALYSIS

¶ 11    On appeal, respondent argues that the trial court erred when it held the dispositional hearing immediately after the trial concluded. Respondent contends that the court improperly denied his request to present additional evidence on placement alternatives at the hearing. According to respondent, the court's decision violated section 40(b)(1) of the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/40(b)(1) (West 2014)).

¶ 12    Respondent's argument presents a question of statutory interpretation, which we review *de novo*. *People v. Gutman*, 2011 IL 110338, ¶ 12. The primary intent of interpreting a statute is to determine the intent of the legislature. See *People v. Amigon*, 239 Ill. 2d 71, 84 (2010). In determining the intent, we rely on the plain language of the statute. *Id.* at 84-85.

¶ 13    The circuit court must hold a dispositional hearing before issuing a commitment order. See *In re Commitment of Fields*, 2012 IL App (1st) 112191, ¶ 73. At issue here is section 40(b)(1) of the Act, which provides in relevant part:

> "The court shall enter an initial commitment order under this Section pursuant to a hearing held as soon as practicable after the judgment is entered that the person who is the subject of a petition under Section 15 is a sexually violent person. If the court lacks sufficient information to make the determination required by paragraph (b)(2) of this Section immediately after trial, it may adjourn the hearing and order the Department to conduct a predispositional investigation or a supplementary mental examination, or both, to assist the court in framing the commitment order." 725 ILCS 207/40(b)(1) (West 2014).

¶ 14    The plain language of section 40(b)(1) establishes that the trial court is permitted to hold a dispositional hearing immediately after trial. However, if the court believes it lacks sufficient information to make a determination, it *may* adjourn the hearing and order the Department of Human Services to conduct a predispositional investigation or supplementary mental examination. The decision to adjourn the hearing and order a predispositional investigation or a supplementary mental examination is within the discretion of the trial court. *In re Detention of Melcher*, 2013 IL App (1st) 123085, ¶¶ 66-67.

¶ 15    Here, pursuant to section 40(b)(1), the trial court determined that it did not lack sufficient information and decided to conduct a dispositional hearing immediately following the trial. The trial court heard the expert witnesses testify extensively at trial. Both experts agreed that respondent had a high risk of recidivism and should be committed. We find no abuse of discretion in the trial court's determination that it did not lack sufficient information to assist in framing the commitment order.[1]

¶ 16    In reaching this conclusion, we reject respondent's argument that the trial court's decision barred him from presenting evidence on his behalf at the dispositional hearing. Respondent suggests that section 40(b)(1) required the trial court to appoint an expert to testify on his behalf; nothing in section 40(b)(1) dictates that respondent is entitled to a court-appointed expert witness. To the contrary, the statute only creates a discretionary right for the trial court to order a predispositional investigation or supplementary mental examination.

¶ 17    Moreover, we cannot say the trial court denied respondent the opportunity to present evidence at the dispositional hearing where he never tendered a witness to testify. Although respondent generally asked the court to appoint an expert to testify as to possible dispositional outcomes, he never identified the witness or indicated that he had a witness that would testify on his behalf. Respondent also failed to cite any authority to support his argument that he is entitled to a court-appointed expert witness.

¶ 18    Respondent's contention is identical to the argument rejected by the First District in *In re Commitment of Butler*, 2013 IL App (1st) 113606. In *Butler*, the court declined to vacate respondent's commitment order where the trial court refused to hold a separate dispositional hearing following trial. *Id.* ¶ 64. The *Butler* court declined to do so because respondent never indicated that he had additional witnesses or evidence to present at the hearing. *Id.* ¶¶ 64-65.

¶ 19    Here, like *Butler*, respondent does not contend that he had witnesses or additional evidence to be introduced at the dispositional hearing. Instead, respondent merely stated that he "preferred" to have the court appoint an expert to testify on his behalf. Under these circumstances, we conclude that there is no need to vacate the commitment order and remand this matter for a dispositional hearing. See *People v. Miller*, 2014 IL App (1st) 122186, ¶ 29; *Melcher*, 2013 IL App (1st) 123085, ¶ 67 (defendant not denied the opportunity to present evidence at a dispositional hearing where he failed to tender a witness).

---

[1]We note that respondent does not specifically contend that the trial court erred in concluding that it did not lack sufficient information to assist in framing the commitment order.

¶ 20                                   III. CONCLUSION

¶ 21        For the foregoing reasons, we affirm the judgment of the circuit court of Tazewell County.

¶ 22        Affirmed.

¶ 23        JUSTICE McDADE, dissenting:

¶ 24        I dissent from the majority's ruling that the circuit court did not err when it held the dispositional hearing immediately after the trial ended.

¶ 25        I do not agree with the majority that Williams's argument is identical to the argument raised by the respondent in *Butler*. *Supra* ¶ 18. In that case, the circuit court held a dispositional hearing immediately after trial even though defense counsel had requested " 'to have an evaluation of Mr. Butler so we may present that evidence to the Court so the Court may decide what recommendation to make to the Department of Human Services.' " *Butler*, 2013 IL App (1st) 113606, ¶ 59. In addressing the question of whether the respondent was denied a dispositional hearing, the *Butler* court acknowledged that the Act granted the circuit court the discretion to hold the dispositional hearing immediately after trial if it believed neither a predispositional investigation nor supplementary mental examination was required but construed it as *not* allowing the court "to deny a respondent's right to present evidence and testimony at the dispositional hearing." *Id.* ¶ 63.

¶ 26        In this case, Williams asked to "have an expert appointed to testify *** *on Mr. Williams' behalf* with regards to alternatives to being housed at Rushville." (Emphasis added.) Unlike the respondent's request in *Butler*, this was not a mere request for a supplementary mental examination. See *id.* ¶ 64. Nor was it a request for a predispositional investigation. It was a request to present evidence on his own behalf, which the circuit court does not have the discretion to deny under the Act. See *id.* ¶¶ 63-64; see also *Gapinski v. Gujrati*, 2017 IL App (3d) 150502, ¶ 63 (Carter, J., specially concurring) ("[a] fundamental requirement of due process is that a party be afforded the opportunity to be heard at a meaningful time and in a meaningful manner, with the operative term being 'meaningful' " (internal quotation marks omitted)).

¶ 27        While the circuit court has the discretion to conduct the dispositional hearing immediately after trial if it believes neither a predispositional investigation nor a supplementary mental evaluation is needed to make a commitment decision, it must be noted that section 40(b)(1) provides that the court shall order *the Department of Human Services* to conduct the predispositional investigation and/or supplementary mental examination, with the right to choose the experts belonging to *the State*. 725 ILCS 207/40(b)(1) (West 2014). Those are not experts that a respondent would choose to present his contentions at the dispositional hearing. Further, if the Act were construed to allow a circuit court to deny a respondent's specific request to present evidence at the dispositional hearing, respondents would be forced to try to present that evidence during trial—*i.e.*, at a time when the only relevant issue is whether the respondent is a sexually violent person. I do not find that to be a reasonable construction of the Act.

¶ 28        The denial of Williams's request to present evidence on his own behalf is even more significant because of the manner in which the circuit court conducted the dispositional hearing. The court never offered the opportunity to Williams to present evidence at the hearing;

rather, it requested only arguments from the parties. See, *e.g.*, *In re Detention of Varner*, 315 Ill. App. 3d 626, 633 (2000) (noting that the circuit court provided the parties with an opportunity to present evidence at a dispositional hearing held immediately after trial); *People v. Winterhalter*, 313 Ill. App. 3d 972, 980 (2000) (same). The dispositional hearing provided for by the Act must not be treated as a mere formality. See *In re Commitment of Dodge*, 2013 IL App (1st) 113603, ¶ 47. Under these circumstances, I would hold that the circuit court erred when it held the dispositional hearing immediately after trial.